UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSEPH PEREZ,

                Petitioner,                Case No. 1:23-cv-309

v.                                   Hon. Hala Y. Jarbou

MATT MACAULEY,

                Respondent.
_____/

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual Allegations

Petitioner Joseph Nathan Perez is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d, and one count of assault by strangulation, in violation of Mich. Comp. Laws § 750.84. On July 3, 2019, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 760.12, to concurrent prison terms of 300 to 400 months for each conviction.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The jury convicted [Petitioner] of assaulting an acquaintance with whom he was briefly romantically involved. The complainant testified that she accompanied [Petitioner] to a construction site, a recently remodeled home on which [Petitioner] was doing finishing work. [Petitioner's] boss had given them permission to spend the night on an air mattress in the basement of the home. The complainant reported that [Petitioner] had been drinking, and both were smoking crack cocaine. He asked her to go to the basement with him, stating to her that he had been waiting for this moment for a long time, and that she was not going to leave the home alive. She said she attempted to calm [Petitioner], but they began arguing and he pushed her toward the kitchen and in the direction of the basement. She yelled and bit his finger in order to make him stop, but she fell near the stairs, at which point [Petitioner] choked her and dragged her down the stairs. According to the complainant, [Petitioner] was suspicious and agitated about her relationships with other men. Once in [the] basement he attacked her, shattered her phone when she refused to unlock it for him, poured cold water on her, choked her multiple times with his hands, causing her to have difficulty breathing, and forced his penis into her mouth and vagina. [Petitioner] forced her to stay in the basement until the following evening, at which point she fled to a nearby church, where someone called the police. Officer Kelly Momber arrived outside the church and first encountered [Petitioner] as he was leaving the area. [Petitioner] denied having anything to do with any female, claiming he was simply working in the area. Officer Momber entered the church and interviewed the complainant, noting her disheveled appearance, marks and bruises on her body, and obvious physical discomfort. He transported her to a sexual assault examination site, where she underwent a sexual assault examination. At trial, [Petitioner] denied threatening the complainant,

2

forcing her to have sex, or strangling her to the point she had difficulty breathing. He claimed their sexual relations were consensual.

*People v. Perez*, No. 350037, 2021 WL 523808, at *1 (Mich. Ct. App. Feb. 11, 2021). The court of appeals affirmed Petitioner's convictions and sentences on February 11, 2021. The Michigan Supreme Court denied leave to appeal on April 5, 2022. (ECF No. 1-1, PageID.105.)

On March 27, 2023, Petitioner filed his habeas corpus petition raising seven grounds for relief, as follows:

I.   Petitioner was denied [his] 5th and 14th Amendment rights to a fair trial when [the] complaining witness testified [that] Petitioner was on [a] tether.

II.   Petitioner was denied [his] 5th and 14th Amendment rights to due process when [the] trial court allowed [the] incarcerated complaining witness to testify in street clothes.

III.   Petitioner was denied [his] 5th and 14th Amendment rights to due process [when the jury] heard testimony from Petitioner's parole officer.

IV.   Petitioner was denied [his] 14th Amendment rights to due process when [an] unqualified nurse testified as an expert witness.

V.   Petitioner was denied [his] 14th Amendment due process right when [the] trial court failed to grant [his] motion for a directed verdict [and relied on an] unreasonable determination of the facts of the case.

VI.   Unreasonable determination of the facts of the case regarding [the] sufficiency of evidence to convict on assault [with] intent to commit great bodily harm less than murder by strangulation.

VII.   Petitioner was denied his 6th Amendment constitutional right to effective assistance of counsel [because] [(a)] counsel failed to investigate [the] complainant's criminal record and present impeachment evidence[; (b)] counsel failed to challenge [Petitioner's] statements to [his] parole officer when he was not advised of [his] *Miranda* rights[; (c)] counsel failed to object to prosecutorial misconduct . . .[; and (d)] counsel [failed to] call[] witnesses to testify [on Petitioner's behalf].

(*Id.*, PageID.5–16.)

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v.*

6

*Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, the fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989))); *see also Ogle v. Ohio Dep't of Rehab. & Corr.*, No. 17-3701, 2018 WL 3244017, at *2 (6th Cir. Feb. 27, 2018); *Stokes v. Scutt*, 527 F. App'x 358, 363–64 (6th Cir. 2013).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The district court can and must raise the exhaustion issue sua sponte, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); Allen, 424 F.2d at 138-39. "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423–24 (6th Cir. 2000).

Petitioner has not met his burden of showing that he fairly presented his fourth habeas ground to the state court as a federal constitutional issue. Petitioner argued that the expert witness testimony from the sexual assault nurse examiner was not admissible under state law. He made no reference at all to the federal constitution or to state or federal decisions using constitutional analysis.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under M.C.R. 6.500 et. seq. Under Michigan law, one such motion may be filed after August 1, 1995. M.C.R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy.

Although the Court may not grant habeas relief on an unexhausted claim, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). As set forth fully below, Petitioner's unexhausted issue is meritless. Accordingly, the Court will consider Petitioner's unexhausted claim.

> **B.      Grounds I and III—Putting Petitioner's Prior Criminal Conduct before the Jury Through the Complainant's Testimony Concerning Petitioner's Tether and the Trial Court's Instruction Explaining that a Witness was a Parole Officer**

Petitioner raises two grounds for relief claiming that the jury was improperly permitted to consider Petitioner's prior criminal conduct when deciding his guilt.  As his first ground for relief, Petitioner contends that his due process rights were violated when the complaining witness testified that Petitioner was on a tether at the time of the offense, even though the witness had been

instructed not to mention Petitioner's criminal background. (Pet., ECF No. 1, PageID.5.) In his third ground for relief, Petitioner asserts that his due process rights were violated when the trial court instructed the jury that a particular witness was Petitioner's parole officer. (*Id.*, PageID.8.)

### 1.  Testimony Regarding the Tether

The Michigan Court of Appeals described the "tether" testimony as follows:

> Before trial, the parties agreed they would not introduce evidence that [Petitioner] was on parole or wearing a tether. However, during the prosecutor's examination of the complainant about which construction sites she and [Petitioner] went to before the assaults, she offered: "Because he said because he let his tether die, and he was about to go back to jail, and he wanted to spend time with me before they caught up with him." The trial court immediately struck the remark from the record and instructed the jury not to consider it.

*Perez*, 2021 WL 523808, at *1. Although Petitioner questions the value of the trial court's instruction, he does not contend that the court of appeals' description of the record is inaccurate.

The court of appeals did not resolve the issue under the Due Process Clause. Instead the court addressed the matter as Petitioner had raised it—as a challenge to the trial court's denial of Petitioner's motion for a mistrial:[1]

> In the present case, the complainant's mention of [Petitioner]'s tether was brief, isolated, and inadvertent. The prosecutor asked a proper foundational question, and instead of providing a direct response, the complainant explained why she and [Petitioner] went from one residence to another. Her unresponsive answer does not appear to have been motivated by a desire to harm [Petitioner] in the eyes of the jury. Rather, it appears to be an instance of her tendency throughout the trial to editorialize instead of providing direct answers to direct questions. In addition, the

---

[1] Petitioner made reference to the denial of his Fifth and Fourteenth Amendment right to a fair trial in the argument heading of his appeal brief. (Pet'r's Appeal Br., ECF No. 1-1, PageID.40.) The argument, however, focuses entirely on the state law regarding mistrials, with one exception. Petitioner states: "It is true that we assume that a jury follows every instruction by the trial court to a 'T.' But a blanket application of that premise fails to accommodate the Due Process clause in a credibility case such as this one." (*Id.*, PageID.43.) Petitioner's passing references to his due process rights likely falls short of fair presentation. Arguably, therefore, Petitioner has failed to exhaust his state law remedies with respect to this claim as well. That failure might preclude this Court from granting habeas relief on the claim; but it does not prevent the Court from denying such relief. *See supra* Section III.A.

trial court immediately struck the remark and instructed the jury that it could not consider it. Jurors are presumed to follow their instructions, *People v. Graves*, 458 Mich. 476, 486, 581 N.W.2d 229 (1998), and instructions are presumed to cure most errors, *People v. Abraham*, 256 Mich. App. 265, 279; 662 N.W.2d 836 (2003). "When a witness for any reason gives an irresponsive answer and which is not competent evidence, and the answer is suppressed at once, the case must be a very peculiar and very strong one which would justify a reversal for such fault or mistake of the witness." *People v. Podsiad*, 295 Mich. 541, 544; 295 N.W. 257 (1940). This is not such a case. In light of the brief, inadvertent, and isolated nature of the comment, and the court's actions, we conclude that the trial court did not abuse its discretion by denying [Petitioner]'s motion for a mistrial.

*Perez*, 2021 WL 523808, at *2.

To the extent that Petitioner claims the trial court erred in denying his request for a mistrial, the decision to grant or deny a mistrial is, generally a matter under state law, and a challenge to such a decision is not cognizable on federal habeas review. *See, e.g.*, *Barry v. Warden*, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11, 2019); *Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012). That decision, however, may impact federal constitutional rights. *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[A] constitutionally protected interest is inevitably affected by any mistrial decision."). For example, if a mistrial is requested because of perceived unfairness caused by the admission of evidence or improper argument, and the request is denied, the underlying impropriety might result in the denial of due process. Thus, federal habeas courts "have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion'" when considering a request to declare a mistrial. *Washington*, 434 U.S. at 514. Filtered through the doubly deferential standard of the AEDPA, "[t]he question . . . is . . . whether the determination of the [state court] that there was no abuse of discretion was 'an unreasonable application of . . . clearly established Federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Petitioner cannot make the necessary showing here with regard to the reference to the tether for two reasons. First, as noted by the state court of appeals, the jurors here were instructed to disregard the offending testimony and jurors are presumed to follow their instructions. *Perez*, 2021

10

WL 523808, at *2. That determination is entirely consistent with clearly established federal law. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

Second, whether the presentation to the jury of certain evidence rises to the level of a due process violation depends upon whether that evidence "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552. Thus, this Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

The evidence at issue here falls into a category generally described as "prior bad acts." *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Bell v. Cone*, 535 U.S. 686, 700 n.5 (2002). There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "prior bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if

11

it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at

75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under

the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v.*

*United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which

holds that a state violates due process by permitting propensity evidence in the form of other bad

acts evidence." *Bugh*, 329 F.3d at 512.

For both reasons, Petitioner has failed to demonstrate that the court of appeals' rejection of

his tether evidence due process claim is contrary to, or an unreasonable application of clearly

established federal law. Thus, Petitioner is not entitled to relief on habeas ground I.

### 2. Informing the Jurors that a Witness was either a Parole Officer or Petitioner's Parole Officer

Petitioner next complains that his due process rights were violated when the trial court

informed the jurors, by way of an unnecessarily revealing limiting instruction, that the witness that

had just testified was Petitioner's parole officer. Petitioner contends that the instruction was just

another means for jurors to learn about Petitioner's prior criminal history.

The Michigan Court of Appeals described the testimony and the instruction as follows:

> In testimony comprising three pages of transcript in a four-day trial, Sean Wheeler
> testified that he was employed by the state of Michigan and had an opportunity to
> meet with [Petitioner] and discuss the event that occurred between [Petitioner] and
> the complainant. [Petitioner] admitted during their meeting that he had choked and
> hit the complainant after she bit him while he was searching her mouth for drugs.
> On cross-examination, defense counsel asked Wheeler if the interview had been
> recorded. Wheeler explained that he had interviewed defendant "at the jail," and
> that he did not have a recording, he was basing his testimony on his memory. After
> Wheeler's testimony, the trial court issued a limiting instruction to the jury:

> > You have just heard from a parole officer regarding what [defendant] may
> > or may not have told him. That, of course, is for you to decide. Whether
> > or not [Petitioner] was, is or has ever been on parole is not something that

you can consider. He is not on trial for anything other than what the charges in this case are.

[Petitioner] argues that, by identifying Wheeler as [Petitioner]'s parole officer, the trial court "went out of the way to tell the jury again that [d]efendant had a criminal record."

*Perez*, 2021 WL 523808, at *3. The court of appeals disagreed with Petitioner's characterization of the information revealed by the trial judge: "the trial court did not inform the jury that Wheeler was *defendant's* parole officer; just that he was *a* parole officer." *Id*. (emphasis in original). The appellate court concluded that even if the jury did infer that Wheeler was Petitioner's parole officer, any possible prejudice was ameliorated by the court's explicit instruction to disregard the parole issue when deciding Petitioner's criminal culpability for the charged crimes. *Id*.

For the same reasons that the tether testimony did not give rise to a constitutional violation, the parole instruction does not either. The court of appeals' conclusion that the trial court's instruction remedied any problem is entirely consistent with clearly established federal law. And, even absent the instruction, clearly established federal law does not require exclusion of "prior bad acts" like a criminal record evidenced by having a parole officer. Accordingly, Petitioner is not entitled to habeas relief on habeas ground III.

### C.   Ground II—Complaining Witness Testifying in Street Clothes

As his second ground for relief, Petitioner contends that his due process rights were violated when the trial court allowed the "incarcerated complaining witness to testify in street clothes." (Pet., ECF No. 1, PageID.7.) The court of appeals rejected Petitioner's claim, concluding that the trial court "wanted the complainant to testify without the taint of jail clothing so that her appearance as a prisoner would not affect the jury's consideration of the merits of the case." *Perez*, 2021 WL 523808, at *2. Moreover, the trial court had told defense counsel that he could cross-

examine the witness "regarding any consideration she expected in exchange for her testimony against [Petitioner]." *Id.*

Petitioner has not cited, and the Court has not located, any Supreme Court authority—or lower court authority—suggesting that a criminal defendant has a constitutional right to compel a witness to wear jail clothing if the witness is incarcerated at the time he or she testifies. Moreover, Petitioner has not demonstrated that the court of appeals' decision was based upon an unreasonable determination of the facts. Petitioner, therefore, is not entitled to relief on this ground.

### D.    Ground IV—Expert Witness Testimony

Petitioner next contends that his due process rights were violated when an "unqualified nurse testified as an expert witness." (Pet., ECF No. 1, PageID.10.) Petitioner contends that Tara Nichols was still in the "training phase of becoming a Sexual Assault Nurse Examiner [(SANE)]" and should not have been qualified as an expert witness because she "had not been certified as a forensic examiner." (*Id.*) Petitioner also faults Ms. Nichols for failing to "present[] her findings for [the] case at bar for peer review." (*Id.*)

It is noteworthy that Petitioner's challenge to the witness's qualification as an expert is just a part of the challenge that he presented in the Michigan Court of Appeals. The court of appeals did not devote much analysis to that part of the challenge when it rejected Petitioner's claim. *See Perez*, 2021 WL 523808, at *4. The appellate court simply recounted the witness's qualifications, explained that the trial judge determined she was qualified, and concluded that the trial judge's determination was not an abuse of discretion.[2]

---

[2] The balance of the court of appeals' analysis was directed to whether the testimony offered by the expert strayed beyond the permissible bounds of expert opinion testimony. *Perez,* 2021 WL 523808, at *4. Specifically, the appellate court assessed whether the expert's opinion that the injuries to the complainant's vaginal wall were "consistent with the history" was, as Petitioner argued, equivalent to an opinion that the injuries were "consistent with sexual assault." *Id.* The appellate court concluded that the testimony stating that "injuries to the complainant's vaginal wall

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

"The admission of expert testimony in a state trial presents a question of state law . . . ." *Randolph v. Wolfenbarger*, No. 04-CV-73475, 2006 WL 1662885, at *5 (E.D. Mich. June 12, 2006) (citing *Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001)); *see also Adesiji v. Minnesota*, 854 F.2d 299, 300 (8th Cir. 1988) (discussing that whether expert testimony regarding general patterns of credibility among children reporting sexual abuse was properly admissible was "essentially a matter of state law"). "Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue." *Randolph*, 2006 WL 1662885, at *5 (citing *United States ex. Rel. Ruddock v. Briley*, 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002)).

The court of appeals' resolution of that state law evidentiary issue is axiomatically correct. The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (stating

---

were consistent with the history . . . did not mean that the injuries were the result of sexual assault." *Id.* Thus, "[v]iewing Nichols's testimony as a whole makes clear that she neither implied that the complainant had suffered sexual assault or vouched for the complainant's credibility." *Id.* Petitioner has not presented that issue to this Court.

"[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Nonetheless, it is not impossible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—might still violate due process. As explained above, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour*, 224 F.3d at 552; *accord Coleman*, 268 F.3d at 439; *Bugh*, 329 F.3d at 512. "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

This Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Petitioner has not, and cannot, make that showing. He has not cited any Supreme Court decisions that support his claim.

Certainly the Supreme Court has spoken regarding qualifying experts to offer opinion testimony. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). But *Daubert* was concerned with the admissibility of expert testimony pursuant to Federal Rule of Evidence 702. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) (stating that "*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction").[3] "The Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure

---

[3] In Michigan, Rule 702 of the Michigan Rules of Evidence incorporates the standards set forth in *Daubert*. *See Gilbert v. Daimler Chrysler Corp.*, 685 N.W.2d 391, 408 (2004).

violates due process." *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017). "The Supreme Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert*, and screening evidence through *Daubert*'s standards is not constitutionally required." *Id*. at 321 (citation omitted); *see Smith v. Ross Corr. Inst*., No. 16-3157, 2017 WL 3623939, at *1 (6th Cir. July 3, 2017) (stating "[t]he district court properly concluded that Smith was not entitled to relief on his claim that the admission of the testimony violated *Daubert* because *Daubert* concerns only the Federal Rules of Evidence and not state evidentiary rules"); *Thomas v. Jackson*, 2017 WL 2608753, at *7 (W.D. Mich. June 16, 2017) (stating that "[a]t no time has the Supreme Court held that *Daubert* and *Kumho Tire* provide the standard for evaluating whether an admission of evidence violates due process").

Because Petitioner has failed to demonstrate that the court of appeals' rejection of this claims is contrary to, or an unreasonable application of clearly established federal law, he is not entitled to relief on habeas ground IV.

### E.      Grounds V and VI—Directed Verdict and Sufficiency of the Evidence

As his fifth ground for relief, Petitioner contends that the trial court violated his due process rights by failing to grant his motion for a directed verdict. (Pet., ECF No. 1, PageID.12.) Petitioner suggests that the trial court relied upon an "unreasonable determination of the facts of the case" because the complainant's testimony was contradicted by "previous statements and physical evidence." (*Id.*) In his sixth ground for relief, Petitioner suggests that there was insufficient evidence presented to support his conviction for assault by strangulation because the state courts relied upon an "unreasonable determination of the facts presented, because all of the facts presented at trial were contradicted by the complaining witness['s] testimony, previous statements, and physical scientific evidence." (*Id.*, PageID.14.)

Although Petitioner's fifth habeas ground attacks the trial court's denial of a directed verdict, it is essentially an attack on the sufficiency of the evidence. The trial court applied the following standard for resolving the motion for directed verdict:

> *People* versus *Cousins*, 480 Michigan Reports, 240 at 244, does indicate that on a motion for directed verdict, the evidence must be viewed in the light most favorable to the prosecutor to determine whether a rational, excuse me, trier-of-fact could have found the essentia1 elements of the offense -- in this case offenses -- were proven beyond a reasonable doubt.

> In a motion for directed verdict, it is not the Court's role to determine credibility. Credibility is always determined by the fact-finder. So, it's really only the Court's role to determine whether enough evidence was presented on the element of the two offenses that have been charged in this case to get the case to the jury.

(Pet'r's *Pro Per* Suppl. Appeal Br., ECF No. 1-1, PageID.75 (quoting the trial transcript).) That standard applied is identical to the constitutional "sufficiency of the evidence" standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires the court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

It is possible that denial of a directed verdict might implicate only state-law issues. For example, if the defendant contends the trial court erred in identifying the essential elements of the crime or available defenses, *see e.g.*, *Al-Maqablh v. Temple*, No. 20-5435, 2021 WL 1733480, at *4 (6th Cir. Mar. 4, 2021). But that was not the nature of Petitioner's challenge to the directed verdict. He specifically challenged the trial court's application of the *Jackson* standard with regard to the trial court's evaluation of the testimony elicited at trial, not the trial court's statement of the state-law elements of the offenses or available defenses. (Pet'r's Appeal Br., ECF No. 1-1, PageID.64; Pet'r's *Pro Per* Suppl. Appeal Br., ECF No. 1-1, PageID.74–80.)

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the court of appeals followed *Jackson*'s command. The court considered the evidence in a light that favored the prosecution against the elements of each offense:

> [Petitioner] was charged with third-degree criminal sexual conduct. "A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if . . . [f]orce or coercion is used to accomplish the sexual penetration." MCL 750.520d(1)(b). "Force or coercion" occurs "[w]hen the actor overcomes the victim through the actual application of physical force or physical violence." See MCL 750.520b(1)(f)(*i*).
>
> The complainant testified that, leading up to the assault, [Petitioner] would not let her out of his sight, that he said he had been "waiting for this for a long time," and that she "wasn't going to be leaving that house alive." She further testified that he physically pushed and dragged her into the basement, where he repeatedly hit her in the head, choked her, forced her to perform fellatio, and penetrated her vagina with his penis against her will. Officer Member's testimony corroborated aspects of the complainant's account, as did the results of the SANE examination.

19

*     *     *

[Petitioner] was also charged with assault by strangulation. Assault by strangulation occurs when one "[a]ssaults another person by strangulation or suffocation." MCL 750.84(1)(b). "Strangulation or suffocation" is defined as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2). A defendant commits an assault when there is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Meissner,* 294 Mich. App. 438, 453–454; 812 N.W.2d 37 (2011) (citation and quotation marks omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another . . . ." *Id.* at 454 (citation and quotation marks omitted).

The complainant testified that, after [Petitioner] forced her into the basement, he used both hands to choke her around her neck and that he strangled her "numerous times." She said it was difficult to breathe while [Petitioner] was strangling her. She reported the same to Nichols. She also told Nichols that she suffered neck pain after the assault, as well as pain while swallowing. The responding officer reported seeing bruises on the victim's head and neck, and a photograph introduced into evidence showed bruising on the complainant's neck. In addition, [Petitioner] admitted to Wheeler that he choked the complainant.

*Perez*, 2021 WL 523808, at *5. The appellate court found that the evidence was sufficient:

[The complainant's] testimony, if believed, was sufficient to support the charged crime of CSC-III. *See People v. Solloway*, 316 Mich. App. 174, 181; 891 N.W.2d 255, 262 (2016) ("In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated."); MCL 750.520h.

*     *     *

"Viewing this evidence[—the complainant's testimony, the evidence of injury, and Petitioner's admission to Wheeler—]in the light most favorable to the prosecution, we conclude that a rational trier of fact could find that the essential elements of assault by strangulation were proved beyond a reasonable doubt. *See Lemmon*, 456 Mich. at 634.

*Id*.

Petitioner does not challenge the recitation of record evidence offered by the court of appeals. Indeed, the factual statement from Petitioner's own counseled appellate brief suggests that the complainant testified exactly as the court of appeals stated she testified. (Pet'r's Appeal

Br., ECF No. 1-1, PageID.34–37.) The entire crux of Petitioner's arguments regarding the failure to grant a motion for a directed verdict and the sufficiency of the evidence is that the complainant's testimony should not be believed. Petitioner invites this Court to reweigh the complainant's credibility and resolve all conflicts and make all inferences in his favor. However, it is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are rational. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head.

Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the verdict is contrary to, or unreasonable applications of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas grounds V and VI.

### F.      Ground VII—Ineffective Assistance of Counsel

As his last ground for relief, Petitioner contends that trial counsel rendered ineffective assistance because counsel (a) failed to investigate the complainant's criminal record and present impeachment evidence; (b) failed to challenge Petitioner's statements to his parole officer when he had not been advised of his *Miranda* rights; (c) failed to object to prosecutorial misconduct; and (d) failed to call witnesses to testify on Petitioner's behalf. (Pet., ECF No. 1, PageID.16.) The Court considers each instance of alleged ineffective assistance below.

### 1.      Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential," per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's analysis of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d),. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . " (citing *Harrington*, 562 U.S. at 102)).

## 2. Failure to Present Impeachment Evidence

Petitioner first faults counsel for failing to "investigate [the] complainant's criminal record and present impeachment evidence." (Pet., ECF No. 1, PageID.16.) The failure to investigate appears to be of no significance. The prosecutor told the trial court and defense counsel that he would provide the complainant's criminal history prior to the opening of proofs. *Perez*, 2021 WL 523808 at *8. Petitioner acknowledges that the prosecutor turned over that information on the first day of trial. (Pet'r's Pro Per Suppl. Br., ECF No. 1-1, PageID.82.)

On appeal, Petitioner alleged that counsel should have impeached the complainant "with prior retail fraud and drug-related convictions." *Perez*, 2021 WL 523808, at *8. Petitioner did not provide the court of appeals with any detail regarding the nature of the convictions beyond the language quoted above.[4] The court of appeals rejected Petitioner's claim, noting that not every conviction may be used for impeachment purposes under Michigan Rule of Evidence 609. *Id.* The appellate court also noted that Petitioner had not established that the convictions at issue here were appropriate for impeachment use under Michigan Rule of Evidence 609. *Id.* Thus, Petitioner's presentation of the issue does not show that counsel's failure to use the convictions to impeach the complainant fell below an objective standard of reasonable performance.

The court of appeals also explained that counsel effectively cross-examined the complainant by "identif[ying] for the jury's consideration various inconsistencies in [her] testimony and contradictions between her testimony and what she told other prosecution witnesses. Counsel also raised critical questions about the interpretation of the results of the SANE examination." *Id.* The court of appeals concluded that Petitioner had not demonstrated "how

---

[4] Petitioner has also failed to provide this Court any detail regarding the nature of the convictions.

introducing evidence of the complainant's prior conviction of retail fraud would have tipped the scale in his favor." *Id.*

The court of appeals' analysis of this ineffective assistance claim hews closely to the *Strickland* standard. Petitioner entirely fails to explain how the court of appeals' analysis is contrary to, or an unreasonable application of, *Strickland*. Indeed, he simply presents the same argument to this Court that he presented to the Michigan Court of Appeals. He offers no ground to overcome the deference this Court must give to the court of appeals' resolution of this ineffective assistance claim. Petitioner, therefore, is not entitled to habeas relief for this ground of alleged ineffective assistance.

### 3.      Failure to Object to Petitioner's Statements to His Parole Officer

Next, Petitioner contends that counsel should have objected to any statements Petitioner made to his parole officer because Petitioner had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (Pet., ECF No. 1, PageID.16.)

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, 384 U.S. at 436, the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478–79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). The remedy for a *Miranda* violation is the exclusion at trial of any ensuing self-incriminating statements. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

The court of appeals rejected Petitioner's claim, stating:

> Prior to Wheeler's testimony, [Petitioner's] counsel questioned whether Wheeler's interview required *Miranda* warnings and whether there was any indication that such warnings had been given. After a bench conference, and counsel's consultation with [Petitioner], counsel and [Petitioner] expressly agreed, on the record, that they would not pursue the objection. Wheeler then testified about his interview with [Petitioner].

> An informed and public waiver of a known right extinguishes any claim of error about that issue. See *People v. Carter*, 462 Mich. 206, 215-216; 612 N.W.2d 144 (2000). In this case, [Petitioner] personally, expressly, and after consultation with his attorney, agreed to allow Wheeler to testify without objection. [Petitioner] now wishes to transform this trial strategy into an "appellate parachute" by using it as a basis for a claim of ineffective assistance of counsel. See *id.* ("Counsel may not harbor error as an appellate parachute.") However, [Petitioner] having waived any objection to Wheeler's testimony, there is nothing to review. See *id.*

*Perez*, 2021 WL 523808, at *10.

Petitioner's claim is procedurally defaulted because he expressly chose to waive any objection regarding his *Miranda* rights. When a state law default prevents further consideration of a federal issue by the state, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004).

Here, the court of appeals relied upon a state procedural bar to deny Petitioner's claim. Moreover, this state procedural rule is adequate and independent because it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). In 2011, the Michigan Supreme Court reiterated its position that "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has

extinguished any error." *People v. Kowalski*, 803 N.W.2d 200, 211 (Mich. 2011) (quoting *People v. Carter*, 612 N.W.2d 144, 149 (Mich. 2000)). Thus, this rule was well established at the time of Petitioner's trial.

If a petitioner procedurally defaulted his federal claim, the petitioner must demonstrate either (1) cause and prejudice—cause for his failure to comply with the state procedural rule (or fairly present the issue in the state courts) and actual prejudice flowing from the violation of federal law alleged in his claim—or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536–37. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Here, Petitioner utterly fails to raise arguments regarding cause and prejudice or actual innocence. Petitioner, therefore, cannot overcome his procedural default of this claim for relief. Furthermore, Petitioner offers nothing to suggest that the court of appeals' determination was not consistent with the record before it.

Petitioner has failed to demonstrate that the court of appeals' determination that Petitioner waived any argument regarding counsel's failure to object to the parole officer's testimony on the grounds that Petitioner had not been given his *Miranda* rights is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to habeas relief for this ground of alleged ineffective assistance.

### 4.    Failure to Object to Prosecutorial Misconduct Regarding Petitioner's Right to Remain Silent

Petitioner next faults counsel for failing to object to alleged prosecutorial misconduct "concerning Petitioner's 5th Amendment right to remain silent on cross-examination and closing." (Pet., ECF No. 1, PageID.16.)

The court of appeals rejected Petitioner's claim, noting that Petitioner had been informed of his *Miranda* rights by Officer Saxe and that Petitioner waived those rights. *Perez*, 2021 WL 523808, at *11. Petitioner, therefore, did not remain silent, and the prosecutor could question Petitioner about "statements he made at trial that he had not made to Officer Saxe." *Id.* Moreover, the court of appeals noted that during closing arguments, the prosecution did not comment on Petitioner's silence, but instead compared what Petitioner testified to at trial with what he had told officers. *Id.* According to the court of appeals, any objection by counsel on the ground that the prosecution was commenting on Petitioner's post-*Miranda* silence would have been futile. *Id.* That determination is entirely consistent with clearly established federal law. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on this claim of ineffective assistance.

### 5.    Failure to Call Witnesses

Finally, Petitioner faults counsel for not calling witnesses to testify on his behalf. (Pet., ECF No. 1, PageID.16.) On direct appeal, Petitioner argued that counsel should have called four witnesses—Petitioner's boss, his boss's wife, and two workers. *Perez*, 2021 WL 523808, at *8. According to Petitioner, these witnesses would have "testified that [Petitioner] and the complainant were 'kissing, flirting, and acting very happy' at the time the complainant alleged prolonged abuse had occurred." *Id.* The court of appeals rejected Petitioner's claim, concluding that Petitioner had

27

not shown that these individuals would have testified as he claimed. *Id.* Moreover, the court of appeals stated:

> The testimony [Petitioner] asserts trial counsel should have elicited from [Petitioner's] proposed witnesses would not have contradicted the complainant's testimony, nor would it have shed light on what happened in the basement. The complainant testified at trial that she and [Petitioner] had had a dating relationship that included consensual sex, and, although they were not dating at the time of the assault, they were spending time together because [Petitioner] "wanted to try to work things out" and she agreed to talk with him. The proposed witnesses' anticipated testimony that [Petitioner] and the complainant were interacting happily does not contradict this. In addition, nothing in the complainant's or [Petitioner's] testimony indicates that any of [Petitioner's] proposed witnesses were in the basement during the time [Petitioner] was assaulting her. In fact, [Petitioner] testified that he and the complainant were in the basement together "after everybody left." Given the foregoing, and considering that whether to call witnesses is a matter of trial strategy that we will not second guess . . ., we conclude that [Petitioner] has not established that trial counsel's failure to call these witnesses constituted deficient performance.

*Id.* at \*9. The court of appeals found that the testimony of the proposed witnesses did not contradict the relevant testimony of the complainant (or Petitioner for that matter). That determination is presumptively correct. That presumption can be overcome with clear and convincing evidence; but Petitioner offers no evidence at all.

Accepting as true that the proposed witnesses would not contradict the key testimony of the complainant, Petitioner has failed to show this Court, as he failed to show the state court of appeals, that his counsel's failure to present the testimony rose to the level of deficient performance or that the failure prejudiced Petitioner in any way.

In short, Petitioner has not shown that the court of appeals' rejection of this ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland*. Therefore, he is not entitled to habeas relief.

## IV.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate

of appealability.


Dated: <u>May 5, 2023</u>              <u>/s/ Hala Y. Jarbou</u>
                                     HALA Y. JARBOU
                                     CHIEF UNITED STATES DISTRICT JUDGE